■TALIAFERRO, Judge.
Plaintiff sued the defendant for. the sum óf $533.26, with five per cent (5%) per an-num interest thereon from judicial demand.. The principal amount consists of three different items, to-wit:
A promissory note of the defendant in favor of the plaintiff, dated June 23, 1947, and due one year from date. $500.48'
Cash loaned... 20.00'
Balance due on account. 2.77
Total .......... $523.25
In brief, plaintiff’s counsel concede that the true amount due plaintiff is $523.25.
Defendant denies that plaintiff is the holder and owner of the note for value, and denies that he owes him any amount. The-demand was rejected and plaintiff appealed! to this Court.
On November 26, 1946, plaintiff sold to: defendant a motor truck for $850.00. He was without cash to make a down payment on the -price .and in order to realize for plaintiff' $450.00 thereof, defendant gave his note for $574.20, payable in twelve (12)-equal monthly installments, secured by mortgage on the truck, which was negotiated . to the Motor Securities Company,, Inc., of Monroe, Louisiana for that amount. Plaintiff agreed to carry the balance of. $400.00 on open account without any definite understanding as to maturity. The.truck was purchased by defendant to enable him to conduct the business of buying and selling hogs and cattle for market, *925 which -business was being financed by the plaintiff.
Plaintiff owned and operated a small grocery store in the City of Monroe, at which defendant made credit purchases, and, in addition, at times, he was advanced small amounts in cash by plaintiff, besides the larger advances with which to buy cattle and hogs.
Plaintiff testified and contends that on June 23, 1947, the date of the note sued upon, defendant still owed him the $400.00 balance on the truck, and, in addition, $100.48 on account; and,, hence, "the note was taken to put in liquid form the two obligations. As concerns the note, defendant testified and argues that when he signed it, it was in blank; that plaintiff told him he was then in a “tight” for ready cash and desired the note to negotiate to procure funds; that he acceded to the request as an accommodation only. It seems that he did not make inquiry as to the amount the note would be filled out, nor as to its maturity. He contends also that when plaintiff asked for this accommodation, it was in the summer of 1948 and not in 1947, the year the note is dated.' 'The significance of the year in which the note was signed is of considerable importance as we shall demonstrate later on in this opinion. At this date (June, 1947) the business relationship between plaintiff and defendant had ceased.
On July 9,' 1947, when there was unpaid on the $574.20 note, above mentioned; thé sum of $239.25, defendant mortgaged the truck to the Three Way Finance Company of Monroe, for $458.40, payable in twelve monthly installments of $38.20 each. The net proceeds of this note were $400.00. He says all of this amount was used by him to purchase cattle,' whereas plaintiff testified that from said proceeds the first mortgage nóte was paid. This would appear to be correct as the first mortgage note is in the record and is marked paid July 23rd, fourteen days after the second mortgage was given. On this issue defendant’s ’Counsel, in brief, assert that the $400.00 was employed to pay to plaintiff the balance due on the truck. So, we have three different versions of the disposition of the $400.00.
In December, 1947, on account of ill health, defendant was forced to enter a hospital in Little Rock, Arkansas, where he remained for forty-five (45) days. He then owed the Three Way Finance Company on above mentioned mortgage note $343.80. Prior to leaving for the hospital, on December 9, 1947, he signed a bill- of sale of the truck to N. B. Thurmond, wherein the price is stated to be $343.80 cash. But, this is not true. Thurmond, however, on said date, paid to the mortgagee $76.40, being the amount of two installments then due. The truck was .at that time delivered to him.
Defendant denies that he sold the truck to Thurmond and persisted in this denial, even after being confronted with the unregistered notarial bill of sale.
On December 19, 1947, Thurmond, by written act, transferred and delivered the truck to the plaintiff. The price stated therein reads: “For the balance noté;’ N. B. Thurmond $76.40. Balance due the Three Way Finance”, which means, in the light of after events, that Thurmond was refunded the $76.40 he had paid to the finance company and plaintiff agreed to pay the balance due that company, or.$267.40. He did pay $38.20 thereof on January 9, 1948, and the balance of $229.20 on February 10, 1948. These payments extinguished the mortgage against the truck.
It is plaintiff’s position that after defendant returned from the hospital the two had an understanding as to the disposition of the truck, which was that it should be repaired and then sold by plaintiff to best advantage and the proceeds of sale credited on the account due by the defendant. Defendant denies this agreement, but we believe it was had. The cost of repairs amounted to $100.47. The truck was sold on February 5th for $450.00 cash, against which plaintiff charged the following items, to-wit: $76.40, $38.20, $229.20 and ,$100.47, a total of $444,27, leaving the small credit balance of $5.73. .
Defendant testified positively that he paid plaintiff the $400.00 balance due on the price of the truck, and to support the *926 plea introduced in evidence a ■ receipt of which the following is a copy, to-wit: .■■
'« 8-1-471
Mike Battaglia . .
Cash $425.00
Paid—Sam Messina.”
As is obvious from the form of this instrument it has more of the appearance of a memorandum of cash advanced and receipt for its re-payment, than it has of a straight-out receipt. The word “paid” and the signature “Sam Messina”, from appearance, were not written with the same pencil and at the same time as was the other portion of the instrument.
Defendant testified that the extra $25.00 in the receipt covered payment of an amount then due by him to plaintiff on merchandise account. Plaintiff testified that this instrument is simply a memorandum of money advanced to defendant with which to buy cattle and was marked paid by him at the end of the week, on return to him of that amount of cash.
We advert to the date of the note sued on, June 23, 1947. Defendant testified emphatically that he did not owe plaintiff one penny when he signed the blank note, buf repeated that it was signed in the summer of 1948 and not in the summer of 1947. He evidently was influenced in making this statement, which we believe to be erroneous, by the date of the above quoted receipt, because, had he not done so, he would have put himself in the position of having paid a debt which he had previously testified he did not owe.
Defendant admitted that he and plaintiff had dealt in the purchase of cattle and hogs for ten or fifteen years. It is shown that during the year 1947 and perhaps prior thereto, some of the cattle purchased by him were slaughtered, part of which were retailed by plaintiff, while some were resold on foot and that at the end of each week profits, if any, were equally divided and the cash advanced by plaintiff repaid. But defendant denied that any one repayment of cash to plaintiff exceeded $50.00, while plaintiff testified that weekly cash advances by him to defendant regularly ran into hundreds of dollars^ ,It is shown, a fact well known to all persons having knowledge of the value of cattle, that during the past several years, ordinary cattle in good condition, sell for more than $100.00.
The reason assigned by defendant for plaintiff’s desire for,him to execute the note is, to say the least, absurd. The record unmistakably reveals that during the year 1947 and the early part of 1948, at least, defendant was without ready cash with which to operate. He was financially unable. to pay down any amount on the price of the truck, and when he hád tó go to the hospital, in order not to lose the truck to his mortgagee, he solicited Thurmond to take over the truck and meet the installments. On the other hand, it is shown by the record that plaintiff owned one mercantile establishment and had an interest in another in the City of Monroe.' It does not appear that he was at any time in need of ready cash he did not have or could not get. Surely, he did not need defendant’s note to , bolster his financial condition or on which to procure needed cash. Relevant to this phase of the case it is shown that defendant remortgaged the truck on December 24, 1947, for $182.52, at which time the first mortgage thereon had not been wholly paid.
-The credibility of the litigants is at issue, but the outcome of the case does not wholly turn upon this issue. There are legal presumptions and principles applicable to the facts, as we find them, that unbalance the scales in plaintiff’s favor. Defendant’s version of some of the facts is unreasonable and not in keeping with every-day human experience. It is unthinkable that plaintiff would request him to sign a note -in blank on which to borrow money when he, defendant, at the time was impecunious. It is not in keeping with human experience nor with sound business practices for a man, who is careful about incurring civil obligations, to sign, as an accommodation, a note for another without knowing the amount of the note and its maturity. The presumption is that he will not do this.
We are clear in the opinion that when defendant signed the note involved *927 herein, it was complete in all of its parts; that it was intended to put in liqúid form the balance due by defendant to plaintiff1 on the truck and on1 open account; and that it was signed on the date it bears! This conclusion completely destroys defendant’s position in the cas'e, but we- will briefly further discuss the legal principle involved.
The burden of establishing the correctness of a plea of payment rests upon the one who tenders it. Defendant has not met the burden with respect to the balance due on the truck. - He testified, as said 'before, that when he signed the note he was not due any amount to -plaintiff, yet he offers in evidence a receipt which he ‘ says paid the balance due on the price of the truck that bears date several months- after the note was signed. -
Plaintiff i has proved :the • correctness of his demand to the extent of $523.25. ■ The note stipulates for the payment,of interest from date and ten per cent (10%) attorneys’ fees, but neither is sued for.
For the reasons herein assigned, the judgment from which appealed .is annulled, avoided and reversed, and there is now judgment in favor of the plaintiff, Sam Messina, and against the defendant, Mike J. Battaglia, in the sum of Five Hundred-Twenty-Three and 25/100 ($523.25) Dollars, with legal interest thereon from judicial demand until paid, and for all costs o-f suit.